UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 5:26-cv-00049-RGK-AGR | Date | January 27, 2026 |
|---|---|---|---|
| Title | *Gevork Burunsuzyan v. Kristi Noem et al* | | |

| Present: The Honorable | R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE | | |
|---|---|---|---|
| Joseph Remigio | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendant: |
|---|---|
| Not Present | Not Present |

**Proceedings:** (IN CHAMBERS) Order Re: Petitioner's *Ex Parte* Application for Preliminary Injunction [6]

## I.  INTRODUCTION

On January 6, 2026, Gevork Burunsuzyan ("Petitioner") filed a Petition for Writ of Habeas Corpus. (ECF No. 1.) On January 15, 2026, Petitioner filed an *Ex Parte* Application for Temporary Restraining Order ("TRO") against Kristi Noem, Todd Lyons, and Fereti Semaia (collectively, "Respondents"). (ECF No. 6.) Petitioner, a noncitizen living in the United States under an Order of Supervision, is currently in U.S. Immigration and Customs Enforcement ("ICE") custody.

Petitioner seeks the Court's order requiring Petitioner be immediately released from custody and not re-detained until he receives adequate notice and a hearing to determine the legality of his re-detention, and Respondents to inform Petitioner of what third country ICE intends to remove Petitioner to, if any, and to provide Petitioner with an individualized opportunity to challenge third country removal through a reasonable fear interview. On January 16, 2026, the Court denied Petitioner's original *Ex Parte* Application for a TRO. (ECF No. 7.)

Now, Petitioner seeks a preliminary injunction on the same grounds. (*See* ECF Nos. 8, 6.) Respondents do not oppose the preliminary injunction. (ECF No. 12.) For the following reasons, the Court **GRANTS** the *Ex Parte* Application for Preliminary Injunction ("Preliminary Injunction").

## II.  FACTUAL BACKGROUND

Petitioner alleges the following facts in the Preliminary Injunction:

On May 25, 1963, Petitioner was born in Syria. As a child, he left Syria with his family and resided in Armenia for approximately fifteen years. When he was seventeen years old, Petitioner and his family lawfully entered the United States on family-based immigration visas. Since then, Petitioner has resided continuously in the United States.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 5:26-cv-00049-RGK-AGR | Date | January 27, 2026 |
|---|---|---|---|
| Title | *Gevork Burunsuzyan v. Kristi Noem et al* | | |

When he was in his twenties, Petitioner developed a substance abuse problem and began associating with others who engaged in criminal activity. Petitioner was later convicted of a serious robbery offense, for which he served approximately ten years in California state prison. On September 5, 2000, while Petitioner was in state custody, an immigration judge ordered Petitioner be removed from the United States.

In or around 2000, Petitioner was released from state prison and was immediately taken into immigration custody. Petitioner remained in immigration detention for approximately eleven months. On or about July 19, 20001, Petitioner was released from immigration custody and placed on an Order of Supervision ("OSUP").

From July 2001 until January 2026, Petitioner lived in the United States under the OSUP. During this time, Petitioner has had no arrests, new criminal charges, or contact with law enforcement other than routine immigration reporting. Petitioner has complied with all conditions of his supervised release. During each of Petitioner's past annual check-in's, immigration officers informed Petitioner that they were continuing efforts to obtain travel documents and instructed him to return the following year. This pattern continued for more than two decades.

During one of those check-in's, Petitioner asked the immigration officer whether he could be released from supervision due to the length of time that had passed. In response, the immigration officer placed a call on speakerphone to the Syrian consulate. During that call, a Syrian consular official stated that there was no record of Petitioner in their database and asked the immigration officer to stop calling the consulate. Nevertheless, Petitioner continued to report annually as instructed by immigration officials.

On December 9, 2025, during a routine check-in, immigration officers placed a GPS ankle monitor on Petitioner and enrolled him in the Intensive Supervision Appearance Program. Petitioner was informed that this change was due to new management enforcing existing laws, and not because of any misconduct on his part. Petitioner complied with these requirements.

On January 6, 2026, Petitioner reported as directed to the immigration office. At that time, Petitioner was presented with a document entitled, "Notice of Revocation of Release" and was asked to sign an acknowledgement of release, which he did. The Notice stated that Petitioner's OSUP had been revoked because of "changed circumstances in [his] case." (Prelim. Inj., Notice of Revocation of Release, Ex. 5, ECF No. 6-2 ("Notice").) The Notice stated that Petitioner's "case is under review by Syria for the issuance of a travel document." (*Id.*) Petitioner was not informed that an application for a travel document had been submitted nor was he told of any change in circumstances. That same day, Petitioner was taken into ICE custody. Petitioner has not received an interview regarding the revocation of his OSUP or the likelihood of his removal.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 5:26-cv-00049-RGK-AGR | Date | January 27, 2026 |
|---|---|---|---|
| Title | *Gevork Burunsuzyan v. Kristi Noem et al* | | |

### III. JUDICIAL STANDARD

"[I]njunctive relief [is] an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). It is "never awarded as of right." *Id*. at 24. A plaintiff must show: (1) likelihood of success on the merits; (2) likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that the balance of equities tips in favor of the moving party; and (4) that an injunction is in the public interest (the "*Winter* test"). *Id*. at 20. The Ninth Circuit has adopted an alternative sliding scale approach, in which the elements of the *Winter* test are balanced, "so that a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). For instance, "serious questions going to the merits and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *Id*. at 1132.

### IV. DISCUSSION

Petitioner asserts that the revocation of his release and his continued detention violate immigration statutes and his due process rights. Through the Petition and this Preliminary Injunction, he seeks the Court's order that he be immediately released from custody and Respondents be enjoined from re-detaining him unless Petitioner is provided adequate notice and a hearing to determine the legality of his re-detention. Petitioner also requests the Court order that if Petitioner is to be removed to a third country, Respondents must inform Petitioner of the government's intention to do so and provide him an individualized opportunity to challenge removal through a reasonable fear interview.

The Court proceeds to consider whether Petitioner's Preliminary Injunction meets the *Winter* test factors.

    **A.**    <u>Likelihood of Success on the Merits</u>

"Likelihood of success on the merits is the most important factor," *California v. Azar*, 911 F.3d 558, 575 (9th Cir. 2018) (citation and internal quotation marks omitted), especially for constitutional claims, *see Junior Sports Mags. Inc. v. Bonta*, 80 F.4th 1109, 1115 (9th Cir. 2023). Petitioner contends he is likely to succeed on the merits of his Petition because (1) his OSUP was unlawfully revoked; (2) his continued detention is unlawful under *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001); and (3) potential removal to a third country without notice would violate his rights to due process. The Court addresses each of these claims in turn.

            **1.**    *<u>Revocation of the Order of Supervision</u>*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 5:26-cv-00049-RGK-AGR | Date | January 27, 2026 |
|---|---|---|---|
| Title | *Gevork Burunsuzyan v. Kristi Noem et al* | | |

The Supreme Court has made it clear that the Due Process Clause "applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). "Federal immigration law establishes procedures for removing aliens living unlawfully in the United States as well as for determining whether such persons are detained during removal proceedings." *Johnson v. Guzman Chavez*, 594 U.S. 523, 523 (2021).

Accordingly, immigration enforcement agencies' failing to comply with federal immigration law when removing or detaining a noncitizen ultimately violates the noncitizen's due process rights. *See, e.g., Touch v. Noem*, 2025 WL 3278019, at *6 (S.D. Cal. Nov. 25, 2025), *adopted sub nom. CHUNY TOUCH, Petitioner, v. KRISTI NOEM, Sec'y of the Dep't of Homeland Sec., et al., Respondents.*, 2025 WL 3296280 (S.D. Cal. Nov. 26, 2025) ("ICE's failure to comply with 8 C.F.R. § 241.4 and § 241.13 violated Petitioner's due process rights."); *see also Diaz v. Wofford*, 2025 WL 2581575, at *7 (E.D. Cal. Sept. 5, 2025) ("DHS's failure to follow its own procedural regulations may constitute a due process violation.").

After a noncitizen is ordered removed, Congress mandated that, in general, ICE "shall remove the alien from the United States within a period of 90 days [('removal period')]," 8 U.S.C. § 1231(a)(1)(A), which begins when the removal order becomes final. *See id.* § 1231(a)(1)(B). After the 90 day removal period expires and the alien has provided good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future, the alien may be release under an OSUP "under § 241.4 if [ICE] determines that the alien would not pose a danger to the public or a risk of flight . . . ." 8 C.F.R. § 241.13(b)(1); *see also id.* § 241.5(a) (setting conditions to be included in an OSUP).

ICE may withdraw approval for release if it can either effectuate the individual's removal from the United States "in the reasonably foreseeable future or where the alien refuses to comply with the conditions of release." *Id.* § 241.13(h)(4); *see also id.* § 241.4(l)(2). For revocation for removal, the OSUP may be revoked if, "on account of changed circumstances," ICE determines there "is a significant likelihood that the alien may be removed in the reasonably foreseeable future." *Id.* § 241.13(i)(2).

Only certain officials have authority to revoke an OSUP, including the Executive Associate Commissioner of the former Immigration and Naturalization Service, which has been conferred to the Director of ICE, or a district director. *See id.* § 241.4(l)(2); *id.* § 1.2 (conferring authority of the Executive Associate Commissioner of the former Immigration and Naturalization Service to the Director of ICE).

Both 8 C.F.R. § 241.4(l)(3) and § 241.13(i)(3) provide that, upon revocation of release, the noncitizen (1) "will be notified of the reasons for revocation of his or her release" and (2) will be given "an initial informal interview promptly after [re-detention] to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." This interview must provide the noncitizen with

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 5:26-cv-00049-RGK-AGR | Date | January 27, 2026 |
|---|---|---|---|
| Title | *Gevork Burunsuzyan v. Kristi Noem et al* | | |

the opportunity to "submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision." *Id.* § 241.13(i)(3). Afterwards, the "revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release." *Id.* Accordingly, in simpler terms, to revoke release and re-detain Petitioner, Respondents must notify Petitioner of the reason for the revocation *and* give him an informal interview.

Here, Petitioner argues that Respondents failed to provide Petitioner proper notice or an interview. The Court agrees.

First, in the Notice, there is an illegible signature above the name "Gaeta, SDDO," which appears to stand for "Supervisory Detention and Deportation Officer," and no specification as to which subsection the revocation is taken under. (*See* Notice.) Notably, an SDDO is not a position explicitly authorized to revoke an OSUP. *See* 8 C.F.R. § 241.4(l)(2); *id.* § 241.13(i)(2). Accordingly, Respondents failed to specify who made the decision to revoke Petitioner's release, and "[t]herefore, to the extent Petitioner's revocation was a discretionary act pursuant to Section 241.4, Respondents do not establish the decision was issued by a properly authorized official." Order Granting in part TRO, *Nazarian v. Noem*, No. 5:25-cv-02694-KK-ADS, *6 n.4, ECF. No. 13.

Second, as stated above, OSUP revocation can occur in only two circumstances: (1) where the noncitizen violates a condition of release; or (2) where, on account of changed circumstances, ICE determines there is a significant likelihood the noncitizen will be removed in the reasonably foreseeable future. Here, neither the Notice nor Respondents have alleged that Petitioner violated the conditions of his OSUP or that there has been a change of circumstances in which there is now a significant likelihood Petitioner will be removed in the reasonably foreseeable future. Instead, the Notice stated that Petitioner's "case is under review by Syria for the issuance of a travel document," which does not appear to be a change of circumstances based on the record of Petitioner's regular check-ins in which immigration officers stated the same for decades.

Third, it is undisputed that Respondents failed to afford Petitioner an informal interview, as is required under 8 C.F.R. § 241.4(l).

These failures are in clear violation of Petitioner's due process rights. Failure to follow these regulations has thus rendered Petitioner's current detention unlawful. For that reason, the Court finds that Petitioner is likely to succeed on his claim that his OSUP was not properly revoked.

    2.    <u>*Unlawful Detention Under Zadvydas v. Davis*</u>

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 5:26-cv-00049-RGK-AGR | Date | January 27, 2026 |
|---|---|---|---|
| Title | ***Gevork Burunsuzyan v. Kristi Noem et al*** | | |

As stated above, federal immigration laws require detention of removable aliens during a 90-day removal period. 8 U.S.C. § 1231(a)(1)–(2)(A). Continued detention is permitted under § 1231(a)(6), but only for the time "reasonably necessary" to effect removal because indefinite detention would run affront with Fifth Amendment Due Process rights. *Zadvydas*, 533 U.S. at 689–90. The "presumptively reasonable" period of detention after a removal order is prescribed to be six months. *Id.* at 701. After that period, "if the alien 'provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future,' the Government must either rebut that showing or release the alien." *Johnson*, 594 U.S. at 529 (quoting *Zadvydas*, 533 U.S. at 689–701).

The six-month presumption of reasonability under *Zadvydas* is "just that—a presumption." *Clark v. Martinez*, 543 U.S. 371, 387 (O'Connor, J., concurring). Such a presumption is not a "prohibition on claims challenging detention less than six months." *Hoang Trinh v. Homan*, 333 F. Supp. 3d 984, 993 (C.D. Cal., 2018). And *Zadvydas* made it clear that "if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute." 533 U.S. at 699–700. Accordingly, we must assess whether Petitioner has established enough evidence that his removal is not reasonably foreseeable. *See id.* at 701 (placing the initial burden on Petitioner to show that there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.").

Here, Petitioner contends there is no significant likelihood of removal in the reasonably foreseeable future. For evidence, Petitioner points to his decades of annual check-ins with immigration officials, in which Petitioner had been repeatedly informed that there were continuous, but unsuccessful efforts to obtain travel documents from Syria. In one of those check-ins, a Syrian consular officer stated Syria had no record of Petitioner and asked the immigration officer to stop contacting the consulate. Respondents have not disputed these facts nor presented Petitioner any application for a travel document to Syria or any other country. Accordingly, since Respondents do not attempt to rebut these arguments, the Court finds Petitioner is likely to succeed on the merits of his argument that his continued detention violates his due process rights under *Zadvydas*.

      3.    <u>*Third Country Removal*</u>

Next, the Court considers Petitioner's claims concerning third country removal. It does not appear that Respondents have confirmed or otherwise indicated its intent to or identified a third country to deport Petitioner to. Accordingly, on the Petitioner's record, the possibility of removal to a third country is merely speculative. Thus, the Court cannot find Respondents have violated Petitioner's due

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 5:26-cv-00049-RGK-AGR | Date | January 27, 2026 |
|---|---|---|---|
| Title | *Gevork Burunsuzyan v. Kristi Noem et al* | | |

process rights in this regard. *See Delkash v. Noem*, 2025 WL 2683988, *5 n.2 (C.D. Cal. Aug. 28, 2025) (holding the same).[1]

In sum, Petitioner has met his burden on the first *Winter* factor, demonstrating he is likely to succeed on the merits of his claims that (1) his OSUP was unlawfully revoked; and (2) his continued detention is unlawful under *Zadvydas*. Accordingly, the Court considers the next *Winter* factors.

### B. Likelihood of Irreparable Harm

In the absence of a preliminary injunction, Petitioner will continue to be unlawfully detained and deprived of his right to due process. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). When the "alleged deprivation of a constitutional right is involved, [as is the case here,] most courts hold that no further showing of irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005) (internal quotation omitted). Nevertheless, detention constitutes "a loss of liberty that is . . . irreparable." *Moreno Galvez v. Cuccinelli*, 492 F. Supp. 3d 1169, 1181 (W.D. Wash. 2020), *aff'd in part, vacated in part on other grounds, remanded sub nom. Moreno Galvez v. Jaddou*, 52 F.4th 821 (9th Cir. 2022). Accordingly, the Court finds that Petitioner is likely to suffer irreparable harm in the absence of a preliminary injunction.

### C. Balance of the Equities and Public Interest

The last two *Winter* factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). The Court agrees with Petitioner that because the revocation of his release was likely inconsistent with federal law, the balance of hardships and public interest factors weigh in favor of a preliminary injunction. *See Delkash*, 2025 WL 2683988, at *6 (holding the same). The preliminary injunction would fulfill Respondents' compelling interest in steady enforcement of immigration laws, including following the processes for revoking release and detaining previously released noncitizens. Accordingly, the Court finds that the last two *Winter* factors weigh in favor of a preliminary injunction.

### V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Petitioner's *Ex Parte* Application for a Preliminary Injunction. The Court hereby **ORDERS** that Respondents **immediately release** Petitioner

---

[1] However, the Court cautions that the government must follow its laws and regulations for removing noncitizens to third countries, in addition to its rules regarding re-detention. See 8 U.S.C. § 1231(b); 8 C.F.R. § 241.15.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 5:26-cv-00049-RGK-AGR | Date | January 27, 2026 |
|---|---|---|---|
| Title | *Gevork Burunsuzyan v. Kristi Noem et al* | | |

from Respondents' custody, and Respondents are **ENJOINED** and restrained from re-detaining Petitioner without proper notice and an opportunity to be heard.[2]

    **IT IS SO ORDERED.**

                                                                                                                                                               :

Initials of Preparer           JRE/gz

---

[2] Federal Rule of Civil Procedure 65(c) requires that, prior to granting injunctive relief, the Court require a movant to pay security "in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." "Despite the seemingly mandatory language, Rule 65(c) invests the district court with discretion as to the amount of security required, if any." *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (internal quotation omitted). Here, the Court waives the security requirement, as it is unlikely that Respondents will incur any significant cost and requiring a bond "would have a negative impact on plaintiff's constitutional rights, as well as the constitutional rights of other members of the public." *Delkash*, 2025 WL 2683988, at *6 n.3 (quoting *Baca v. Moreno Valley Unified Sch. Dist.*, 936 F. Supp. 719, 738 (C.D. Cal. 1996)).